IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


Maranda M. Willis,                              :
               Plaintiff               :       Civil Action 2:09-cv-00465

     v.                                        :       Judge Graham

Michael J. Astrue,                              :       Magistrate Judge Abel
Commissioner of Social Security,
               Defendant               :

**REPORT AND RECOMMENDATION**

     Plaintiff Maranda M. Willis brings this action under 42 U.S.C. §§405(g)  and

1383(c)(3) for review of a final decision of the Commissioner of Social Security denying

her application for Disability Insurance and Supplemental Security Income benefits.

This matter is before the  Magistrate Judge for a report and recommendation on the

parties' cross-motions for summary judgment.

     <u>**Summary of Issues.**</u>

     Plaintiff argues that the decision of the Commissioner denying benefits should be

reversed because the administrative law judge failed to properly assess plaintiff's

diabetes. The administrative law judge interpreted statements citing "improved control"

of her diabetes to mean that her condition was adequately controlled. The

administrative law judge improperly disregarded evidence that she experienced

symptoms on a daily basis. Plaintiff also argues that the administrative law judge failed

to give good reasons for disregarding the opinions of Drs. Blackman, Gibson and

Graham.

**Procedural History.**  Plaintiff Willis filed her application for disability insurance benefits on April 13, 2005, alleging that she became disabled on November 15, 2004, at age 22, by diabetes, stomach problems, and pancreas problems.  (R. 89.)  The application was denied initially and upon reconsideration.  Plaintiff sought a *de novo* hearing before an administrative law judge.  On June 27, 2008, an administrative law judge held a hearing at which plaintiff, represented by counsel, appeared and testified.  (R. 636.)  A vocational expert also testified.  On July 24, 2008, the administrative law judge issued a decision finding that Willis was not disabled within the meaning of the Act.  (R. 14-22.) On July 24, 2008, the Appeals Council denied plaintiff's request for review and adopted the administrative law judge's decision as the final decision of the Commissioner of Social Security.  (R. 11-13.)

**Age, Education, and Work Experience.**  Willis was born June 23, 1982.   (R. 58.) She has a high school education.  (R. 95.)  She has worked as a cashier, egg roll maker, and nursing assistant.  She last worked November 15, 2004.  (R. 90.)

**Plaintiff's Testimony.** Willis testified that she completed high school. She also completed a nursing assistant course and obtained her CNA license. She worked for 6 years as a certified nursing assistant. She stopped working at the nursing home because she had not been feeling well. She experienced a lot of fatigue, excessive thirst, and stomach pains. After she became ill, she babysat her cousin's daughter, who was 12 years old.

Willis was diagnosed with diabetes after she was found passed out. She was in a diabetic coma. When she was brought to the hospital she was tested, and her blood sugars for the past three months had been in the 1000s.

Willis takes 50 units of Lantus by injection every morning and one unit of Novolog for every 10 grams of carbs that she eats. She typically takes 8 shots a day. She also takes two ten milligram Percocets every four hours and 10 milligrams of methadone two to three times a day in addition to Lyrica, Xanax, and Celexa.

She has been hospitalized several times since her first hospitalization. She was most recently hospitalized for diabetic ketoacidoso. She experiences episodes of ketoacidoso a couple of times a month, but she is able to handle it at home much better now. She has been hospitalized a couple of time in the past year because her diabetes has not been satisfactorily controlled.

Willis also testified that she has arthritis, neuropathy in my right leg, back problems, rheumatoid arthritis, and carpal tunnel syndrome. She had her gallbladder removed in August 2004. She has received injections for arthritis in her back, but they did not provide her much relief. She stopped seeing the pain management specialist because her insurance would not cover it any longer. Willis stated that the neuropathy was very painful, and she takes a lot of medication for pain. She experienced pain in her right leg and back all day, every day. She needed to use a walker when she woke up in the morning in order to get out of bed. Dr. Graham prescribed the walker. She also used to attend aquatic pool therapy three times a week.

Willis testified that her mother usually woke her up around 8 a.m. Her mother comes to her house to assist her when her boyfriend is at work. Her mother helps care for Willis's sons. Willis tried to clean as much as possible, but her mother also helped her with housework. She usually took a break at about 11 a.m. and tried to get back up between 1-2 p.m. to play with her children. At 5 p.m., she tried to start supper, but her mother also assisted with preparing the meal.

Willis stated that she had about eight doctor's appointments each month. Her medications made her very tired. She recently learned that she has narcolepsy. She is prescribed Xanax for panic attacks and anxiety. She tested her sugars 10-15 times per day and typically required eight injections of insulin. When her sugars were above 200, she felt fatigued and thirsty. She experienced this on a daily basis. When she had low blood sugar, she felt shaky. She experienced low blood sugar about once a week.

The neuropathy caused burning, tingling, and aching in her right leg from her hip down to her toes. With her medications, her pain was a three on a scale of one to ten. If she stood or walked around for about fifteen minutes, her pain level was a 5. If she continued to stand and/or walk, her pain would reach 10. She could only sit for approximately 20 minutes before becoming sore. Later in her testimony, Willis stated she could probably walk or stand for 30-45 minutes before needing to sit. She stated she could only lift and/or carry five pounds.  (R. 639-64.)

**Medical Evidence of Record.** The administrative law judge's decision fairly sets out the relevant medical evidence of record. This Report and Recommendation will only briefly summarize that evidence concerning her diabetes.

Fairfield Medical Center. On February 21, 2005, Willis fainted and was brought to the emergency room. Her glucose was 580. She was admitted to the intensive care unit for new onset of diabetes mellitus with diabetic ketoacidosis. (R. 345-36.) On March 2, 2005, Willis returned to the hospital. She had developed nausea, vomiting, and an episode similar to a seizure. She had passed out. Her blood sugar was 235. (R. 229-30.)

On March 10, 2005, Willis presented at the emergency room because she was having difficulty controlling her blood sugar. Her glucose was 343. She had passed out on her couch and was somewhat confused when the emergency squad arrived. (R. 226-28.) On March 14, 2005, plaintiff was brought to the emergency room while unconscious. Her blood sugar was 527. (R. 334-35.) Plaintiff signed herself out of the hospital against medical advice. (R 333.)

On March 28, 2005, plaintiff presented at the hospital with complaints that her sugars were running high. She was given an IV and hydrated vigorously. Her urinalysis showed glucosuria with no ketones. She was given insulin in addition to morphine for pain. (R. 222-23.) On March 30, 2005, Willis was treated at the emergency room for probable bronchitis and elevated blood sugars. (R. 327-32.) On arrival, Willis was slightly dehydrated. Accu-Chek was 405. She was started on IV fluids and admitted for hydration and insulin therapy. The ER doctor noted that Willis's blood sugars had

never been completely controlled since her diagnosis. She was admitted. By morning, her blood sugars had improved. She tolerated a full ADA diet without significant vomiting. There was no evidence of DKA. *Id.*

On May 17, 2005, Willis was treated at the emergency room for low glucose. (R. 216-18.) Her blood sugar was 38, and her friend noticed she was drowsy and brought her to the hospital. Plaintiff was given an 1800-calorie ADA diet, ketorolac, and Phenergan. (R. 218.)

On June 28, 2005. Willis was treated at the emergency room for elevated blood sugar. (R. 211-14.) She reported that for the past 10 days her blood sugars have been inconsistent. She had been following her medication regimen as directed, but her blood sugar continued to rise throughout the day. Willis reported that she had not been feeling well lately, but she wasn't able to put her finger on anything specific. She was given IV fluids, insulin and Phenergan. (R. 214.)

On July 27, 2005, Willis was brought to the emergency room via emergency squad. She gave herself 30 units of Novolog instead of 30 units of Lantus. She woke up and her blood sugar was 32. She was placed on IV saline and given an 1800-calorie ADA diet and Phenergan IV. (R. 208-10.) On August 2, 2005, Willis was treated at the emergency room for complaints nausea, blurred vision, and being lightheaded. Despite having insulin that morning, a fingerstick at the emergency room was 432. She had a trace of ketones. Willis reported that she had had a large amount of ketones in her urine

that morning. She was placed on an insulin drip and instructed to follow up with her doctor the next day. (R. 206-07.)

On September 2, 2005, Willis was treated at the emergency room. She reported that she had been having trouble keeping her blood sugar under control. She had fair amount of acetone in her urine. She had been urinating a lot. She had vomited once in the past day and had nausea. Her glucose was 347. Her urinalysis was normal except for ketonuria and glycosuria. Her insulin dose was increased. She was discharged with instructions to follow up with her doctor in four to five days. (R. 322-23.)

On September 7, 2005, Willis went to the hospital following three days of gradual worsening of her symptoms and an inability to control her blood sugar despite taking sliding scale insulin at least four times a day. (R. 317-21.) The emergency room doctor found the poor control of Willis's diabetes puzzling. (R. 320.) Willis was given IV fluids and insulin. *Id.*

Grant Medical Center. On March 15, 2005, plaintiff presented at the emergency room with complaints of having episodes of fainting spells after leaving the hospital in Lancaster against medical advice based on her belief that they were not adequately controlling her sugar. She had diarrhea for the past two days and was now vomiting. According to her family members, her blood sugar had not been under 300. She was admitted to the hospital. (134-135.) Her glucose was 474. (R. 137.) Dr. Garabis diagnosed hyperglycemia due to poor compliance with a new onset of diabetes. (R. 138.)

John D. Blackman, M.D. On March 22, 2005, Willis was seen by a nurse practitioner in Dr. Blackman's office. (R. 290-91.) Willis reported increased thirst, decreased appetite, fatigue, weight gain, heat and cold intolerance, hair loss, and muscle cramps. (R. 290.)

On April 26, 2005, Dr. Blackman, an endocrinologist, began treating plaintiff. She was treated with insulin with Lantus 20 units at bedtime and Humalog 6 units before breakfast, 8 before lunch, and 10 before dinner. (R. 201.) Dr. Blackman indicated that Willis monitored her sugars four times a day and counted carbohydrates. Willis had become more comfortable with the program and had not had any major hypoglycemic episodes. *Id.* Willis reported dizziness, headaches, black out spells, numbness in her hands and feet, back pain, shortness of breath with walking, chest pressure when excited, palpitations, heartburn, abdominal bloating, and fatigue.

On August 9, 2005, Willis was seen at Dr. Blackman's office, but the treatment note was not signed. She reported increased thirst and decreased appetite. She reported weight gain. She denied experiencing any fatigue. (R. 284-85.) On October 25, 2005, Will was seen at Dr. Blackman's office. (R. 282-83.)

In January 2006, Dr. Blackman altered plaintiff's insulin regimen. (R. 276.) A January 12, 2006 letter from Dr. Blackman indicated that plaintiff continued to have some hypoglycemia. She experienced symptoms when her blood sugar was below 100. Dr. Blackman noted that her diabetes control was not "ideal" with a glycohemoglobin of 8.8%. (R. 276-77.)

Jennifer Gibson, M.D. On April 6, 2005, Dr. Gibson, a family practitioner began treating Willis. She noted that Willis had frequent episodes of DKA. (R. 496.) Dr. Gibson prescribed twenty units of Lantus insulin before bed, and six units of Humalog before breakfast, eight units before lunch, and ten units before supper. She also added a sliding scale if Willis's sugars were high. (R. 497.) On May 13, 2005, Willis reported that her legs ached. (R. 494.) On May 18, 2005, Willis reported continued leg pain. Dr. Gibson found the pain puzzling and indicated that it was too early for diabetic neuropathy. (R. 493.) On September 19, 2005, Dr. Gibson noted that plaintiff had worsening ketosis. (R. 489.)

On October 18, 2005, Dr. Gibson indicated that plaintiff's blood sugar had been high the previous night in the 300-400s, but prior to that they had been good. (R. 488.) On December 19, 2005, Willis reported that her sugars had been up and down. (R. 487.) On February 14, 2006, Dr. Gibson stated that lowering plaintiff's dose of Lantus had resulted in her sugars going up. Dr. Gibson adjusted her medication again. (R. 485.)

**Administrative Law Judge's Findings.** The administrative law judge concluded that plaintiff's severe impairments consisted of insulin-dependent diabetes mellitus with diabetic neuropathy, bilateral carpal tunnel syndrome, and cervical and lumbar degenerative disc and joint disease. The administrative law judge concluded that her allegations of stomach and pancreatic problems were not supported by credible evidence. (R. 16.) Plaintiff's diabetes did not meet or equal listing 9.08 because the record did not establish that she had neuropathy in two extremities.

The administrative law judge determined that Willis retained the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a) except that she needs the opportunity to alternate between sitting and standing at one-hour intervals. She also cannot do constant reaching or handling or work in environments that would expose her to concentrations of fumes, odors, dusts, gases, poor ventilation, or hazards. (R. 17.)

The administrative law judge found that plaintiff's allegations concerning the intensity, persistence and limiting effects of her symptoms was not credible. (R. 18.) He noted that plaintiff was diagnosed with diabetes three months after the alleged onset date. The administrative law judge concluded that although at times her diabetes had been poorly controlled, the medical evidence was not consistent with her allegations of fatigue and hospital treatments to the extent that she would be unable to sustain the modest exertional demands of sedentary work:

> Her allegations of widely-varying glucose levels are not supported by the longitudinal record. There was an emergency room visit in March 2006 primarily for abdominal pain, with a notation of elevated blood sugar, but no signs or symptoms of disabling diabetic problems (Exhibit 8F/7). Progress notes from Dr. Blackman and others show no evidence of end organ damage or other significant residuals (Exhibit 6F). Notes from Buckeye Family Health, where the claimant was treated for diabetes beginning in 2005, show the claimant had no visits between February and September 2006, and was sent a letter in June 2006 stating that she had missed two appointments (Exhibit 10F). This provides further support for the conclusion that the claimant's diabetes control was sub-optimal for several months after her diagnosis in February 2005, but her control and symptoms improved by the end of 2005 and in 2006. There were no hospital or emergency room visits primarily for high blood sugars between September 2005 and February 2007. The claimant was treated in

an emergency room for hypoglycemia on February 28, 2007, with a glucose level of 99. It was reported that she had collapsed in her bathroom, but she was unable to give the paramedics an account of what happened. She arrived in the ER at 23:11, and was discharged within two hours. There are no other records of hospital or emergency room visits from hypoglycemic episodes since the alleged onset date.

(R. 18.) The administrative law judge concluded that her complaints regarding the intensity of her pain were not supported by the record. Had she experienced excruciating and unbearable pain as she alleged, he believed there should have been more hospital or emergency room visits. Although she had some injections, she did not have ongoing treatment beyond office visits and prescriptions for pain medication. There was no evidence that she underwent physical therapy, attended a pain clinic, or used a TENS unit. The usual signs of severe pain, such as abnormal weight loss or muscle atrophy, were not present. She did not display any signs of pain or discomfort at the hearing. She also managed to babysit and earned $6,650 in 2006. (R. 19.)

**Standard of Review**.  Under the provisions of 42 U.S.C. §405(g), "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive.  . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Company v. NLRB*, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'"  *Id.*  *LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976).  The Commissioner's findings of fact must be based upon the record as a whole.  *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Houston v. Secretary*, 736 F.2d 365, 366

(6th Cir. 1984); *Fraley v. Secretary*, 733 F.2d 437, 439-440 (6th Cir. 1984). In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" *Beavers v. Secretary of Health, Education and Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)(quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1950)); *Wages v. Secretary of Health and Human Services*, 755 F.2d 495, 497 (6th Cir. 1985).

**<u>Plaintiff's Arguments.</u>** Plaintiff argues that the decision of the Commissioner denying benefits should be reversed because:

- Plaintiff argues that the administrative law judge erred when he equated "improved control" with "adequate control." Plaintiff maintains that the administrative law judge failed to give good reasons for disregarding the opinions of Drs. Gibson and Graham.

- Willis also seeks remand for the purpose of considering new and material evidence. Plaintiff has submitted the treatment records from Dr. Graham's office for the period of July 16, 2008 through October 29, 2009, which include notes from Dr. Houssein, an endocrinologist, showing continued problems controlling Willis's diabetes.

**Analysis.**  Treating Doctors' Opinions.  A treating doctor's opinion[1] on the issue

of disability is entitled to greater weight than that of a physician who has examined

plaintiff on only one occasion or who has merely conducted a paper review of the

medical evidence of record.  20 C.F.R. § 404.1527(d)(1).  *Hurst v. Schweiker*, 725 F.2d 53,

55 (6th Cir. 1984); *Lashley v. Secretary of Health and Human Services*, 708 F.2d 1048, 1054

(6th Cir. 1983).  The Commissioner's regulations explain that Social Security generally

gives more weight to a treating doctors' opinions because treators are usually "most

able to provide a detailed, longitudinal picture" of the claimant's medical impairments.

20 C.F.R. § 404.1527(d)(2).  When the treating doctor's opinion "is well-supported by

medically acceptable clinical and laboratory diagnostic techniques and is not

inconsistent with the other substantial evidence in your case record" the Commissioner

"will give it controlling weight. " *Id.*

---

[1]The Commissioner's regulations define "medical opinions" as "statements from
physicians and psychologists or other acceptable medical sources that reflect judgments
about the nature and severity of your impairment(s), including your symptoms,
diagnosis and prognosis, what you can still do despite impairment(s), and your
physical or mental restrictions."  20 C.F.R. § 404.1527(a)(2). Treating sources often
express more than one medical opinion, including "at least one diagnosis, a prognosis
and an opinion about what the individual can still do." SSR 96-2p, 1996 WL 374188, at
*2. When an administrative law judge fails to give a good reason for rejecting a treator's
medical opinion, remand is required unless the failure does not ultimately affect the
decision, *i.e.*, the error is *de minimus. Wilson,* 378 F.3d at 547. So reversible error is not
committed where the treator's opinion "is patently deficient that the Commissioner
could not possibly credit it;" the administrative law judge's findings credit the treator's
opinion or makes findings consistent with it; or the decision meets the goal of 20 C.F.R.
§ 1527(d)(2) but does not technically meet all its requirements. *Id.*

Even though a claimant's treating physician may be expected to have a greater insight into his patient's condition than a one-time examining physician or a medical adviser, Congress specifically amended the Social Security Act in 1967 to provide that to be disabling an impairment must be "medically determinable." 42 U.S.C. §423(d)(1)(A). Consequently, a treating doctor's opinion does not bind the Commissioner when it is not supported by detailed clinical and diagnostic test evidence. *Warner v. Commissioner of Social Security,* 375 F.3d 387, 390 (6th Cir. 2004); *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779-780 (6th Cir. 1987); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1983); *Halsey v. Richardson*, 441 F.2d 1230, 1235-1236 (6th Cir. 1971); *Lafoon v. Califano*, 558 F.2d 253, 254-256 (5th Cir. 1975). 20 C.F.R. §§404.1513(b), (c), (d), 404.1526(b), and 404.1527(a)(1)[2].

The Commissioner's regulations provide that she will generally "give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you." 20 C.F.R. § 404.1527(d)(1). When a treating source's opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case

---

[2]Section 404.157(a)(1) provides:
You can only be found disabled if you are unable to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. See §404.1505. Your impairment must result from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. See §404.1508.

record, we will give it controlling weight." 20 C.F.R. § 404.1527(d)(2).  In determining the weight to assign a treating source's opinion, the Commissioner considers the length of the relationship and frequency of examination; nature and extent of the treatment relationship; how well-supported the opinion is by medical signs and laboratory findings; its consistency with the record as a whole; the treating source's specialization; the source's familiarity with the Social Security program and understanding of its evidentiary requirements; and the extent to which the source is familiar with other information in the case record relevant to decision.  *Id.*  Subject to these guidelines, the Commissioner is the one responsible for determining whether a claimant is disabled.  20 C.F.R. § 404.1527(e)(1).

Social Security Ruling 96-2p provides that "[c]ontrolling weight cannot be given to a treating source's medical opinion unless the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques."  Consequently, the decision-maker must have "an understanding of the clinical signs and laboratory findings and what they signify."  *Id.*  When the treating source's opinion "is well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight . . . ."  The Commissioner's regulations further provide that the longer a doctor has treated the claimant, the greater weight the Commissioner will give his or her medical opinion.  When the doctor has treated the claimant long enough "to have obtained a longitudinal picture of your impairment, we will give the source's

[opinion] more weight than we would give it if it were from a non-treating source." 20

C.F.R. §404.1527(d)(2)(I).

The Commissioner has issued a policy statement about how to assess treating

sources' medical opinions. Social Security Ruling 96-2p. It emphasizes:

1. A case cannot be decided in reliance on a medical opinion without
   some reasonable support for the opinion.

2. Controlling weight may be given only in appropriate circumstances
   to medical opinions, *i.e.*, opinions on the issue(s) of the nature and
   severity of an individual's impairment(s), from treating sources.

3. Controlling weight may not be given to a treating source's medical
   opinion unless the opinion is well-supported by medically acceptable
   clinical and laboratory diagnostic techniques.

4. Even if a treating source's medical opinion is well-supported,
   controlling weight may not be given to the opinion unless it also is
   "not inconsistent" with the other substantial evidence in the case
   record.

5. The judgment whether a treating source's medical opinion is well-
   supported and not inconsistent with the other substantial evidence in
   the case record requires an understanding of the clinical signs and
   laboratory findings and what they signify.

6. If a treating source's medical opinion is well-supported and not
   inconsistent with the other substantial evidence in the case record, it
   must be given controlling weight; *i.e.*, it must be adopted.

7. A finding that a treating source's medical opinion is not entitled to
   controlling weight does not mean that the opinion is rejected. It may
   still be entitled to deference and be adopted by the adjudicator.

Even when the treating source's opinion is not controlling, it may carry sufficient

weight to be adopted by the Commissioner:

Adjudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weigh-ed using all of the factors provided in 20 CFR 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

SSR 96-2p.

The case law is consistent with the principals set out in Social Security Ruling 96-2p. A broad conclusory statement of a treating physician that his patient is disabled is not controlling. *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984). For the treating physician's opinion to have controlling weight it must have "sufficient data to support the diagnosis." *Kirk v. Secretary of Health and Human Services*, 667 F.2d 524, 536, 538 (6th Cir. 1981); *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). The Commissioner may reject the treating doctor's opinions when "good reasons are identified for not accepting them." *Hall v. Bowen*, 837 F.2d 272, 276 (6th Cir. 1988); 20 C.F.R. § 404.1527(d)(2)("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion"); *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544 (6th Cir. 2004). Even when the Commissioner determines not to give a treartor's opinion controlling weight, the decision-maker must evaluate the treator's opinion using the factors set out in 20 C.F.R. § 404.1527(d)(2). *Wilson,* 378 F.3d at 544; *Hensley v. Astrue,* 573 F.3d 263, 266 (6th Cir. 2009). There remains a rebuttable

presumption that the treating physician's opinion "is entitled to great deference." *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 242 (6th Cir. 2007); *Hensley,* above. The Commissioner makes the final decision on the ultimate issue of disability. *Warner v. Commissioner of Social Security,* 375 F.3d at 390; *Walker v. Secretary of Health & Human Services,* 980 F.2d 1066, 1070 (6th Cir. 1992); *Duncan v. Secretary of Health and Human Services*, 801 F.2d 847, 855 (6th Cir. 1986); *Harris v. Heckler*, 756 F.2d at 435; *Watkins v. Schweiker*, 667 F.2d 954, 958 n.1 (11th Cir. 1982).

<u>Treating Doctor: Discussion</u>. Plaintiff disputes that administrative law judge's finding that the record did not support her allegations of widely-varying glucose levels. The administrative law judge noted that Dr. Blackman did not identify evidence of end organ damage or other significant residuals. He further noted that although plaintiff's diabetes control was sub-optimal for several months after her diagnosis in February 2005, her control and symptoms improved by the end of 2005 and in 2006.

Willis argues that the administrative law judge failed to give good reasons for disregarding the opinions of Drs. Blackman, Gibson and Graham. These doctors, however, did not provide any opinion as to what impact plaintiff's diabetes had on her ability to perform work-related activities. The administrative law judge fairly summarized the evidence of record, and plaintiff does not point to any opinion of these doctors suggesting that Willis's diabetes prevented her from working.

<u>Remand Pursuant to Sentence Six</u>. Plaintiff also seeks remand under 42 U.S.C. § 405(g), sentence six, to permit the Commissioner to consider new and material

evidence. When the Appeals Council denies a claimant's request for review, the decision of the administrative law judge becomes the final decision of the Commissioner. *Casey v. Secy. of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993). This Court reviews the administrative law judge's decision, not that of the Appeals Council denying the request for review. *Id.* Consequently, only evidence of record before the administrative law judge may be considered by the District Court in reviewing the final decision of the Commissioner of Social Security denying benefits. *Cline v. Comm'r. of Social Security*, 96 F.3d 146, 148-49 (6th Cir. 1996). A claimant may seek remand so that the evidence presented to the Appeals Council can be considered by the administrative law judge. *Id.*; *Gartman v. Apfel*, 220 F.3d 918, 922 (8th Cir. 2000).

Section 405(g), sentence six, provides, in relevant part:

> The court may . . . at any time order additional evidence to be taken before the [Commissioner], but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

The evidence supporting a motion to remand must be both new and material. *Cline v. Commissioner*, 96 F.3d 146, 148 (6th Cir. 1996). Evidence is "new only if it was 'not in existence or available to the claimant at the time of the administrative proceeding.' *Sullivan v. Finkelstein,* 496 U.S. 617, 626 (1990)." *Foster v. Halter,* 279 F.3d 348, 357 (6th Cir. 2001). It is material "only if there is 'a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence.' *Sizemore v. Secretary of Health & Human Services,* 865

19

F.2d 709, 711 (6th Cir. 1988)." *Id.* Good cause is shown "by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ. *Willis v. Secretary of Health & Human Services,* 727 F.2d 551, 554 (1984)(per curiam). *Id.* Merely cumulative evidence does not establish good cause for a remand. *Borman v. Heckler,* 706 F.2d 564, 568 (6th Cir. 1983); *Carroll v. Califano,* 619 F.2d 1157, 1162 (6th Cir. 1980). The plaintiff has the burden of establishing that the evidence is new and material and that there is good cause for not having presented the evidence to the Administrative Law Judge. *Id.,* citing, *Oliver v. Secretary of Health & Human Services,* 804 F.2d 964, 966 (6th Cir. 1986).

Plaintiff seeks remand based on Dr. Graham's office chart for the period of July 16, 2008 through October 29, 2009, which includes reports from three office appointments with endocrinologist, Assem Houssein, M.D. The new evidence includes a August 27, 2008 letter from Dr. Houssein indicating that Willis reported her diabetes had been under better control following a recent hospitalization and increase in her insulin dose. Dr. Houssein diagnosed Brittle type I diabetes mellitus with improved glycemic control. Doc. 17 at 17. A January 7, 2009 letter from Dr. Houssein indicated that Willis experienced a short period of time of hyperglycemia following a total abdominal hysterectomy. She had no hypoglycemia since her last visit. He noted that she had improved glycemic control. Doc. 17 at 14. A June 10, 2009 letter from Dr. Houssein that indicated that Willis had been doing very well until she noticed a gradual and significant increase in her blood sugar readings in the 200-300 range. She had

increased polydypsia, polyuria, and nocturia. She had a recurrent yeast infection, and her ketones were moderate. Although Dr. Houssein was not sure what the precipating factor was for Willis's hyperglycemic, he noted that she had run out of Novolog and was using her grandmother's insulin. Dr. Houssein increased her medication. Doc. 17 at 8.

Here, plaintiff has not demonstrated that the evidence is material because it is unlikely that the Commissioner would have reached a different disposition of the disability claim if presented with this evidence. Dr. Houssein's notes demonstrate that the plaintiff continued to have some difficulty controlling her sugar, but they also indicate that she was stable at times.

From a review of the record as a whole, I conclude that there is substantial evidence supporting the administrative law judge's decision denying benefits. Accordingly, it is **RECOMMENDED** that the decision of the Commissioner of Social Security be **AFFIRMED.** It is **FURTHER RECOMMENDED** that plaintiff's motion for summary judgment be **DENIED** and that defendant's motion for summary judgment be **GRANTED.** The Magistrate Judge also **RECOMMENDS** that plaintiff's motion to remand under sentence six is **DENIED.**

If any party objects to this Report and Recommendation, that party may, within ten (10) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the part thereof in

question, as well as the basis for objection thereto.  28 U.S.C. §636(b)(1)(B); Rule 72(b),

Fed. R. Civ. P.

   The parties are specifically advised that failure to object to the Report and

Recommendation will result in a waiver of the right to *de novo* review by the District

Judge and waiver of the right to appeal the judgment of the District Court.  *Thomas v.*

*Arn*, 474 U.S. 140, 150-52 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See*

*also, Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir. 1989).




                                          s/Mark R.  Abel
                                          United States Magistrate Judge